70 F.3d 1271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald BOWLING, Gloria Bowling, Plaintiffs-Appellants,
Shamrock Coal Company, Inc., Intervening Plaintiff-Appellant,
Special Fund by Vickig. Newberg, Acting Director,
Intervening Plaintiff,
v.
GENERAL MOTORS CORPORATION, Chevrolet Division, Defendant-Appellee.
 Nos. 94-6061, 94-6145.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1995.
 
 Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge; and JOINER, District Judge.*
 Per Curiam.
 
 
 1
 Plaintiffs Ronald and Gloria Bowling and Shamrock Coal Company ("Shamrock") appeal the entry of summary judgment in favor of defendant General Motors Corporation in this products liability case arising out of Ronald Bowling's on-the-job accident in a GM truck. Bowling contends that he suffered injuries because of a faulty design of the seat belt. We affirm.
 
 I.
 
 2
 Bowling was employed by Shamrock as a supply truck driver, and regularly drove a one-ton GM dump truck that was purchased by Shamrock in April 1990. In January 1991, Bowling drove that truck off a gravel road and down a ten-foot embankment. Bowling testified that he was wearing his seat belt when the truck went down the embankment, and that, although he held on tightly to the steering wheel, he was "jerked around" inside the cab, and ended up lying flat across the seat. Bowling acknowledged that his body did not come into contact with any other part of the interior of the cab, such as the roof, door or dashboard. Bowling suffered pain in his neck and back and in his left shoulder and arm as a result of the incident.
 
 
 3
 The truck was in no accidents prior or subsequent to this incident, and suffered no apparent damage as a result of being driven off the road. The truck remained in use for two years after the incident with the original seat belts in place, and required only routine maintenance during this period. Shamrock received no complaints regarding the seat belt while the truck was in operation.
 
 
 4
 Bowling filed a products liability action against General Motors, contending that his injuries were caused or enhanced by a defective seat belt design. Shamrock and Kentucky's Special Fund intervened as plaintiffs to assert subrogation rights arising from their payment of worker's compensation benefits to Bowling.
 
 
 5
 Bowling attempted to support his claim that the truck's seat belt system was defective with the testimony of a mechanical engineer, Andrew Gilberg, who testified that the system was defective because it was designed only for barrier impacts. Gilberg testified that the seat belt was not designed to protect occupants in run-off-the-road accidents, in which the impact, if any, is preceded by jostling and bouncing. In this situation, the driver starts to move in the vehicle before the seat belt's latch bar falls into place and restrains him. This phenomenon is called "skip lock." Gilberg acknowledged that the seat belt system complied with federal safety standards, but testified further that these standards did not require seat belts to protect against skip lock. Thus, according to Gilberg, the seat belt system was defective despite the fact that it complied with federal safety standards. The seat belt in Shamrock's truck was removed for testing by Gilberg in June 1993. Gilberg testified that the teeth of the ratchet mechanism were chipped, and that this was clear evidence that skip lock had occurred at some point while the seat belt was in use. Gilberg candidly acknowledged, however, that he could not testify to a reasonable degree of certainty that the seat belt experienced skip lock on the day Bowling drove off the road.
 
 
 6
 Bowling also relied on the testimony of a physician, Dr. James Templin, attempting to tie his injuries to the allegedly faulty seat belt. Templin testified, however, that Bowling's injuries could have occurred under any circumstances, if the seat belt was functioning properly or not functioning properly.
 
 
 7
 The district court granted GM's motion for summary judgment on two grounds. First, the court relied on KY.REV.STAT.ANN. Sec. 411.310(2) (Baldwin 1994), which creates a rebuttable presumption that a product is not defective if the "design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured." The court held that the seat belt system's conformance to federal safety standards entitled General Motors to the statutory presumption against defectiveness and that Bowling's allegations of a defective design based on the design's susceptibility to increased wear and tear could not overcome that presumption. The court further held that Bowling had failed to demonstrate that the alleged defect caused the seat belt to malfunction on the date of Bowling's accident.
 
 II.
 
 8
 Bowling and Shamrock contend that the court erred in determining that there were no genuine issues of material fact as to whether the seat belt system malfunctioned on the day of the accident and thus contributed to Bowling's injuries, and also erred in its interpretation of KY.REV.STAT.ANN. Sec. 411.310(2) (Baldwin 1994). We review the district court's grant of summary judgment de novo. Pursuant to FED.R.CIV.P. 56(c), summary judgment is mandated after adequate time for discovery and upon motion, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive evidentiary standard of proof that would apply at the trial on the merits applies on a summary judgment motion as well. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 9
 The plaintiff in a products liability action has the burden of proving that the product was defective. Sexton v. Bell Helmets, Inc., 926 F.2d 331, 333 (4th Cir.) (applying Kentucky law), cert. denied, 502 U.S. 820 (1991). The plaintiff is required to demonstrate the product's defectiveness regardless of whether the product enjoys the statutory presumption. Id. Thus, we turn to the question at the heart of this case, whether Bowling demonstrated under Kentucky law the existence of a genuine fact issue as to whether the seat belt suffered from a defective design.
 
 
 10
 In making out a product liability case, the plaintiff must "present something more than a conclusion that it was theoretically probable that a different design would have been feasible and would have prevented his injury[.]" Ingersoll-Rand Co. v. Rice, 775 S.W.2d 924, 929 (Ky.Ct.App.1988). A manufacturer is not required to design the best possible product, or one as good as others make, or a better product than the one he has, so long as it is reasonably safe. The fact that a manufacturer utilizes a design employed by others in the industry is evidence favorable to the defendant, but not conclusive. Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 69-70 (Ky.1973). A plaintiff may establish the existence of a design defect by "measuring the product against a standard articulated expressly by government or industry or established by society in its expectations held about the product at the time of its sale." Sexton, 926 F.2d at 337. Bowling presented no proof that GM's seat belt design failed to conform to industry or government standards, or that it failed to satisfy demonstrated societal expectations held regarding seat belts in 1990. Bowling's claim of defective design was unsupported by evidence, and the court thus properly granted summary judgment against him.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation