INGERSOLL–RAND
COMPANY, Appellant,

v.

Anthony RICE, Glens Falls Insurance Company, and Jackson Drilling Company, Appellees.

No. 87–CA–1780–MR.

Court of Appeals of Kentucky.

Oct. 14, 1988.

As Modified Feb. 3, 1989.

Discretionary Review Denied
Sept. 20, 1989.

Lionel A. Hawse, John G. McNeill, Landrum, Shouse & Patterson, Lexington, for appellant.

Edward S. Monohan, Florence, Michael L. Williams, Covington, Robert F. Duncan, Thomas L. Travis, Clark, Ward & Hopgood, Lexington, Michael J. Schmitt, Wells, Porter, Schmitt & Walker, Paintsville, for appellees.

Before HOWERTON, C.J., and COMBS [1] and McDONALD, JJ.

McDONALD, Judge:

This is an appeal of a products liability action. Anthony Rice brought suit against Ingersoll–Rand Company after he was injured on a mobile drill rig owned by his employer, Jackson Drilling Company, and manufactured by Ingersoll–Rand. Rice sought damages based upon negligence, breach of warranty and strict liability. Approximately two years later, Ingersoll–Rand filed a third-party complaint against Jackson Drilling Company, seeking contribution and indemnity from Jackson for any damages awarded to Rice. Because of Ingersoll–Rand's delay in bringing its claim, the trial court separated the two actions, reserving Ingersoll–Rand's claim against Jackson Drilling Company to be tried independently from Rice's claim against Ingersoll–Rand.[2]

Rice was severely injured while riding the rotary head of a portable oil drilling rig manufactured and sold by Ingersoll–Rand

---

1. This decision was reached and this opinion concurred in prior to Judge Combs' resignation from this Court to accept election to the Supreme Court.

2. As of the date this appeal was heard, Ingersoll–Rand had not yet tried its claim against Jackson Drilling Company.

to Jackson Drilling Company in 1976. Rice was 25 years old at the time of his injury; the accident occurred less than two hours after he began his first day of work with Jackson Drilling Company. Rice apparently had no prior experience working around drill rigs.

The drill rig on which Rice was injured consists of a derrick which is mounted on the back of a truck. At the drilling site, the derrick is raised hydraulically to a height of approximately 37 feet. The drill head rotates, forcing a drill bit and a 25–foot length of pipe into the ground. When an entire length of pipe is in the ground, it is disconnected from the head. The rotary head is returned to the top of the derrick, another length of pipe is attached and the process is repeated until the desired depth is reached. The drill rig is operated from a control panel located immediately to the right of the rotary head on the rear of the rig. The control panel contains a drill feed lever which controls the upward and downward travel of the rotary head, levers that control the speed of this travel and several emergency shutdown devices. The maximum speed of the rotary head is approximately 100 feet per minute. The derrick itself can be lowered in a few minutes under ideal conditions.

Rice was injured when he fell while riding the oil rig's rotary head to the top of the derrick. Rice was asked to ride the drill's rotary head by his site foreman in order to paint certain markers on the derrick which allow the drillers to determine the depth to which they have drilled. The crew on which Rice was working began drilling in the early evening, and there was some fear that the foreman would not see the markers in the dark. Rice climbed several feet up the derrick, straddled the rotary head, rode to the top of the derrick and, when the rotary head's upward movement was not stopped, was crushed between the top of the head and the derrick.

At trial, the crew foreman testified that he intended to stop the head at the marker five feet from the top of the derrick but that the drill feed control malfunctioned and he was unable to stop the drill rig's ascent immediately. According to Rice's brief, in the few seconds it took the crew foreman to react, Rice's body became jammed between the upper portion of the derrick tower and the rotary head. A few seconds later, when the foreman was able to reverse the head, Rice fell to the ground. He fell 25 to 30 feet from the top of the derrick, striking a truck before he hit the ground. His injuries included severe and permanent atrophy of his left side, several fractures, a concussion and multiple internal and external injuries.

Rice's claim was tried before a jury and a verdict was returned for Rice awarding him $86,905.92 for reasonable medical expenses, and $850,000 for the destruction of his power to earn money. The trial judge gave the workers' compensation insurance carrier, Glens Falls Insurance Company, a lien against the first $130,195.92 paid by Ingersoll–Rand to Rice as reimbursement for workers' compensation benefits paid to Rice during the pendency of the litigation.

At trial, Rice contended that Ingersoll–Rand knew that oil workers routinely used the head as an "elevator" to get up and down the derrick for maintenance. Rice contends that Ingersoll–Rand knew this practice existed in 1976 when the rig involved in this lawsuit was manufactured and marketed. Rice argued that, under the circumstances, Ingersoll–Rand should have placed a warning or erected a guard against riding the rotary head, or that Ingersoll–Rand should have made efforts to insure that its safety manual, which contained a warning against using the head as an elevator, was distributed to old, as well as new, purchasers of the drill rig.

Ingersoll–Rand defended on the grounds that the drill rig was manufactured in accordance with industry standards; that no company manufacturing drill rigs at the time used a warning or guard on the head of their drills; and that there were no industry standards from any source requiring or recommending either a warning or a

guard. Ingersoll–Rand also argued that liability rested with Jackson Drilling Company because the rig on which Rice was injured was poorly maintained. Various parts, including the emergency shutdown button, were missing from the control panel. The throttle controls were "wired" for the highest speed, the lights designed to illuminate the derrick were missing, the machine was covered with grease, and the operator's manual was in the company office in Tennessee rather than in the cab of the drill rig. In addition, Ingersoll–Rand contended that Jackson had not formally trained the crew foreman to operate its drill, and that the foreman had not read the operator's manual for the rig. Finally, Ingersoll–Rand contended that Rice's own contributory negligence in climbing on the rotary head was a bar to his recovery.

■ Ingersoll–Rand makes five arguments on appeal. First, Ingersoll–Rand argues that Rice's expert witness, James Wiatt, was not qualified to express an opinion on the design of drill rigs and that, even if he was qualified, his testimony was not sufficient to submit the case to the jury. Wiatt has a degree in mechanical engineering and worked for 32 years for a manufacturer of machine tools. Wiatt observed a drill rig in operation, reviewed photos and engineering drawings of the rig and opined that Ingersoll–Rand's rig was an "accident ready to happen." Ingersoll–Rand contends that Wiatt was not qualified as an expert and that his testimony should have been excluded because he lacked experience in the drilling industry, had only limited experience with the product, and had no specific technical or practical familiarity with the design of the product. However, the decision as to qualification of a witness as an expert rests in the discretion of the trial court, and the trial court's ruling is seldom reversed on appeal. *Lee v. Butler*, Ky.App., 605 S.W.2d 20 (1979); *Island Creek Coal Co. v. Rodgers*, Ky.App., 644 S.W.2d 339, 345 (1982); R. Lawson, *The*

*Kentucky Evidence Law Handbook* § 6.10 (1984). In this case, although Wiatt did not have an abundance of direct, practical experience with mobile drill rigs, given his general experience as a mechanical engineer and in the area of products safety engineering, and his observation of the drill rig in formulating his opinion for trial, we cannot say that the trial court abused its discretion in allowing his expert testimony.

■ We do have some reservations, however, on the issue of whether Wiatt's testimony was sufficient to go to the jury on the issue of strict liability. Our own review of the record reveals that Wiatt testified in a very conclusory fashion that the drill rig manufactured by Ingersoll–Rand was defective and therefore unreasonably dangerous. In our opinion, Wiatt's testimony is strikingly similar to that in *Jones v. Hutchinson Manufacturing Company*, Ky., 502 S.W.2d 66 (1973), in which an expert proposed a *post hoc* guard which might have prevented an injury. It appears to be undisputed between the parties that the statutory presumptions contained in KRS 411.310 apply to Ingersoll–Rand's drill rig. Specifically, the injury to Rice occurred both more than five years after the date of sale of the drill rig, and more than eight years after the date of the rig's manufacture. Also, the product was manufactured in conformance with the prevailing standards and state of the art in existence at the time the rig was manufactured.[3] Even if the statutory presumptions of KRS 411.310 do nothing more than codify what the law has always been, the plaintiff must still prove by a preponderance of the evidence that the product in question is defective. *See* R. Eades, *Products Liability, The Law in Kentucky* §§ 8–3 and 8–4 (1981). We can discern no evidence in the record which rebuts these two presumptions. As the former Court of Appeals noted in *Jones v. Hutchinson:*

> Proof of nothing more than that a particular injury would not have occurred had

---

**3.** We are not convinced that the slight variations in appearance between Ingersoll–Rand's rotary head and those of the other drill rig manufacturers is significant enough to be relevant.

the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product.

502 S.W.2d 66 at 70, citing 63 Am.Jur.2d, *Products Liability* § 73. On remand, unless Rice can present something more than a conclusion that it was theoretically probable that a different design would have been feasible and would have prevented his injury, we are of the opinion that the issue of strict liability should not be submitted to the jury.

█ Next, Ingersoll–Rand argues that, but for the state of disrepair of the drill rig, Rice's accident would not have occurred. Under KRS 411.320, a manufacturer is liable only for injuries that would have occurred if the product had been used in its original, unaltered and unmodified condition. Product alteration or modification includes the failure to observe routine care and maintenance. Again, it appears to be undisputed that the drill rig on which Rice was injured was not in its original condition. Several pieces were missing from the control panel, including an emergency shutdown button, and speed control levers were wired into place for maximum speed. The machine was covered with dirt and grease, and several lights were not operating.

█ Rice argues that none of these alterations or modifications was a "substantial cause of the occurrence resulting in injury or damages" as required by KRS 411.320. We believe that Rice misreads the statute. Subsection (1), which absolves manufacturers from liability in certain circumstances, does not require that the alteration or modification be a "substantial cause" of the plaintiff's injury. Rather, it provides for a manufacturer's liability only for the injury that would have occurred if the product was used in its original unaltered and unmodified condition. Only in subsections (2) and (3) does the element of "substantial cause" come into play in those instances where a plaintiff has performed an unauthorized alteration to a product or where a plaintiff's contributory negligence was a substantial cause of his injury. Rice did not modify the drill rig himself, so subsection (2) is inapplicable. We believe, however, that there is enough evidence in the record to allow reasonable minds to conclude that Ingersoll–Rand's drill rig would have caused Rice's injury despite the poor maintenance by Jackson Drilling Company. This is a question of fact for the jury, so a directed verdict was not warranted. *Wheeler v. Andrew Jergens Co.*, Ky. App., 696 S.W.2d 326 (1985). We do believe, however, that Ingersoll–Rand is entitled to an instruction on the condition of the machine.

█ Ingersoll–Rand also argues that it was entitled to a directed verdict because the evidence established that Rice was negligent as a matter of law and therefore barred from recovering in a products liability action. KRS 411.320(3); *Reda Pump Co. A. Div. of TRW, Inc. v. Finck*, Ky., 713 S.W.2d 818 (1986). Under different facts, we would be inclined to agree with Ingersoll–Rand that a directed verdict should have been granted because of Rice's own conduct which contributed to his injury. The danger attendant to riding the rotary head appears obvious. However, Rice was on his first day at the job for Jackson Drilling Company; he'd been working for less than two hours before his crew foreman asked him to ride the rotary head up to paint the markers on the derrick. The jury was to evaluate Rice's conduct as to whether he exercised ordinary care for his own safety, as an ordinarily prudent oil rigger would do under like circumstances. There was evidence to support him in this regard. And, as an unknowledgeable user, we cannot say that Rice was necessarily negligent as a matter of law in riding on the rotary head. The question of Rice's contributory negligence was presented to the jury in their instructions and we will not substitute our judgment for theirs on that element of the case.

█ Ingersoll–Rand also argues that the trial court erred by failing to instruct the

jury on Jackson Drilling Company's negligence; by failing to give an instruction which would have allowed the jury to apportion liability between Ingersoll–Rand and Jackson; and by allowing Glens Falls Insurance Company to recover its workers' compensation payments from Rice's judgment against Ingersoll–Rand. We disagree.

Given the late date at which Ingersoll–Rand filed its third-party complaint against Jackson Drilling Company, we believe the trial court correctly ordered that its claim be tried independently of Rice's claim against Ingersoll–Rand. We believe that upon remand the same method of trial should be conducted, although there have been some significant changes in the law since the trial: one change in case law and one by statute.

Ingersoll–Rand argues that *Floyd v. Carlisle Construction Company, Inc.*, Ky., 758 S.W.2d 430 (1988), stands for the proposition that every tortfeasor sued, or capable of being sued, will be adjudged as to liability for injury in direct proportion to fault, and his liability limited to the extent of his fault. However, the *Floyd* case does not have the mix of employee, employer and product liability tortfeasors. *Floyd* in no way discussed or construed *Burrell v. Elec. Plant Bd. of Franklin, Ky.*, Ky., 676 S.W.2d 231 (1984). We can only assume that *Burrell* still controls this litigation upon remand.

■ We are further confounded by KRS 411.182 (effective July 15, 1988) which adopts comparative negligence in products liability cases, thus overruling KRS 411.-320(3), and which statutorily overrules *Reda Pump Co., supra.* We also note that KRS 411.182(4) covers the workers' compensation situation; thus, an agreement to operate under the act is a "similar agreement" within the statute. But because KRS 411.182 does not have retroactive application pursuant to KRS 446.080(3)[4], the trial court will have to try this case the same as if the new statute did not exist.

■ Ingersoll–Rand will be able to present testimony regarding Jackson Drilling Company's negligence in failing to properly maintain its machinery, failing to train its employees and failing to enforce its policy against riding the rotary head. The fact that Ingersoll–Rand is not entitled to an instruction on Jackson Drilling Company's duties as an employer does not negate this element of Ingersoll–Rand's defense.

The Supreme Court stated very clearly in *Burrell*:

> Further, as direction to the trial court, the issues in this case do not trigger the application of either KRS 454.040, which permits the jury to apportion damages where the plaintiff's claim is against two or more tortfeasors, nor *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970), which permits the jury to apportion damages between a settling tortfeasor who is no longer a party and a non-settling tortfeasor.

*Floyd* primarily relied upon *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), and *Burrell* was decided after *Hilen v. Hays* adopted the doctrine of comparative fault in Kentucky. We see no inconsistency between *Hilen v. Hays* and the literal interpretation of KRS 454.040 which allows juries to apportion fault only among joint defendants brought in by the original plaintiff. The underlying conception in comparative fault may be that no defendant should have liability for damages greater than its degree of fault, but Ingersoll–Rand is not prejudiced by the absence of an apportionment instruction. Ingersoll–Rand's claim against Jackson Drilling Company is simply preserved for later disposition which could serve to offset Rice's judgment against it.

■ Similarly, we disagree with Ingersoll–Rand's argument that Glens Falls Insurance Company may be prevented from recovering workers' compensation benefits paid to Rice because of Jackson Drilling Company's purported negligence. KRS 342.700(1) provides for recovery of

---

**4.** No statute shall be construed to be retroactive    unless expressly so declared.

compensation paid by an employer, insurance carrier, the Special Fund or the Uninsured Employers Fund from the "person in whom legal liability for damages rests." As we read KRS 342.700(1) and recent case law from our Supreme Court in *Mastin v. Liberal Markets*, Ky., 674 S.W.2d 7 (1984), the rights to reimbursement and subrogation provided by statute are tied directly to the employee's recovery of damages from a third party. The compensation paid by Glens Falls to Rice was provided solely as a matter of contract, whether or not there was any fault on the part of Rice or his employer. To allow Glens Falls a lien on those damages awarded to Rice does not prejudice Ingersoll–Rand in any way; it simply prevents Rice from enjoying a double recovery. The imposition of the lien in this case came after the jury reached its verdict. The jury was not aware that an insurance carrier would be reimbursed first from its damages award. The lien was placed by the trial judge on the front end of the award the jury made to Rice; it was not in addition to the jury's award. Under such circumstances we do not believe the employer's negligence forecloses a workers' compensation insurance carrier's right to reimbursement where a third-party tortfeasor is adjudged liable in damages to the employee. We do not believe that the possibly negligent use of the drill rig by Rice's employer, Jackson Drilling Company, should serve to prevent the right of reimbursement clearly provided for an insurance carrier by KRS 342.700(1). Where an insurance carrier is providing benefits as a matter of contract, the employer's negligence is not imputed to the insurer. The trial judge did not err in giving Glens Falls a lien for benefits already paid to Rice regardless of the fact that Jackson Drilling Company may subsequently be found to share liability with Ingersoll–Rand to some degree.

Finally, Ingersoll–Rand argues that the trial judge erred in the instructions given to the jury. With this argument we agree, although for somewhat different reasons than those proffered by Ingersoll–Rand.

The judge gave eight instructions to the jury. Apparently they were not the instructions offered by either Ingersoll–Rand or Rice. The judge gave three instructions addressing the liability of Ingersoll–Rand. Those instructions provided:

### Instruction No. 3

The jury will find for the plaintiff, Anthony Rice, if you believe from the evidence:

(a) That the defendant, Ingersoll–Rand Company, designed, manufactured, marketed, and/or designed the Model T–4 Drillmaster drilling rig in question;

(b) That the drilling rig was in a defective condition and unreasonably dangerous to the user at the time the drilling rig was manufactured;

(c) That such defect was the substantial factor in causing the injuries sustained by the plaintiff, Anthony Rice.

The phrase "defective condition and unreasonably dangerous" means that a reasonably prudent manufacturer of drill rigs fully aware of the risk would not have put the rig on the market.

....

### Instruction No. 4

The jury is further instructed that you will find for the plaintiff, Anthony Rice, under this instruction if you believe from the evidence:

(a) That the defendant, Ingersoll–Rand Company, designed, manufactured, marketed, and/or designed the Model T–4 Drillmaster drilling rig in question;

(b) *That it was the duty of the said defendant to weigh the risk of injury from the drilling rig, as designed, against its benefits, as designed, and if the risks outweighed the benefits, to redesign it in such a way that the risk of injury was minimized or eliminated;* [Emphasis added.]

(c) That such defect in design, if any, was the substantial factor in causing the

injury sustained by the plaintiff, Anthony Rice.

....

### Instruction No. 5

The jury will find for the plaintiff, Anthony Rice, if you believe from the evidence:

(a) That the defendant, Ingersoll–Rand Company, designed, manufactured, marketed, and/or designed the Model T–4 Drillmaster drilling rig in question;

(b) That said defendant was to post such warning or warnings as would bring to a user's attention fair and adequate notice of any and all dangers that the defendant could reasonably foresee that might arise from the use or misuse of the drilling rig except those that are obvious;

(c) That such failure of notice was a substantial factor in causing the injuries sustained by the plaintiff, Anthony Rice.

....

Ingersoll–Rand complains that the instructions given were unduly repetitive and focused inappropriately on the warning issue. Ingersoll–Rand's chief complaint appears to be with Instruction No. 5. We are more troubled, however, by Instruction No. 4. Neither of the parties disputes Instruction No. 3 which sets out the doctrine of strict liability provided in *Restatement (Second) of Torts* § 402A, (1965).

Although we agree with Ingersoll–Rand that Instruction No. 5 was inartfully worded, we also believe that the general legal principles embodied by that instruction were appropriately given to the jury. *Post v. American Cleaning Equipment Corporation*, Ky., 437 S.W.2d 516 (1969); J. Palmore, *Kentucky Instructions to Juries* § 24.04 (1977). As we read Instruction No. 5, the trial judge intended to focus on Ingersoll–Rand's alleged negli-

gence in failing to insure that former purchasers of its drill rig received a copy of the safety manual put together by Ingersoll–Rand in 1976 after Jackson Drilling Company purchased the rig on which Rice was injured. That safety manual contains a drawing of a man standing on the rotary head and riding it up the derrick. The drawing is accompanied by a warning not to ride the rotary head as an elevator. Given the existence of this safety manual, it seems reasonable to conclude that Ingersoll–Rand had some awareness that oil drillers were using the rotary head inappropriately as an elevator.[5] The issue, then, is whether Ingersoll–Rand was negligent in its failure to locate and send warning letters to former customers who had purchased drill rigs, or to try and place warning decals on all of its drill rigs already out in the field. Whether or not Ingersoll–Rand was negligent for its failure to engage in what seems to us a formidable task, a negligence instruction was appropriate. We agree with Ingersoll–Rand that where the issue is solely one of strict liability, warning is just one factor for a jury to consider in its ultimate determination of whether a product was manufactured in a "defective condition unreasonably dangerous" and should not be singled out for consideration. *Nichols v. Union Underwear Co., Inc.*, Ky., 602 S.W.2d 429 (1980). Where a party is also making a claim of negligence, however, a negligence instruction is warranted. In this case, the negligence instruction given by the trial judge appears to be couched in the language of strict liability. The instruction should contain some reference to Ingersoll–Rand's duty of ordinary care.

As noted above, we are more disturbed by the risk/benefit analysis provided in Instruction No. 4. This instruction apparently found its genesis in a concurring opinion in *Nichols v. Union Under-*

---

**5.** The use here was not a bizarre use of the drill head whereby it falls outside the bounds of foreseeability, although it was an unintended product use from the manufacturer's point of view. For a good discussion of this point, *see* Sales, *The Duty to Warn and Instruct for Safe Use in Strict Tort Liability*, 13 St. Mary's L.J. 521, 533 (1982).

*wear Company, supra* at page 434. There a risk/benefit standard was suggested as a means to clarify products liability law in Kentucky. The instruction was not approved by the majority opinion in that case and we do not proffer an opinion on its appropriateness in future cases; but such an instruction was not appropriate in this case. In Kentucky "the basic function of instructions ... is to tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who bears the burden of proof on that issue." J. Palmore, *Kentucky Instructions to Juries* § 1301 (1977). There was simply no evidence before the jury in this case which would allow the jury to evaluate the risks and benefits associated with the design and manufacture of Ingersoll–Rand's drill rig in order for them to use this instruction in any meaningful way. *West Virginia Tractor and Equipment Company v. Cain*, Ky., 487 S.W.2d 910 (1972).

The judgment of the Lee Circuit Court is reversed and this matter is remanded for a new trial consistent with this opinion.

All concur.