Allen J. WEMYSS, Joey A. Griffin and
State Farm Mutual Automobile
Insurance Company, Appellants,

v.

Shelby Jean COLEMAN, Appellee.

Supreme Court of Kentucky.

April 30, 1987.

William J. Rudloff, Bowling Green, for appellants.

J. Richard Downey, Franklin, for appellee.

LEIBSON, Justice.

This case arises out of a motor vehicle collision on October 7, 1981 in Simpson County, Kentucky. The appellee, Shelby Jean Coleman, was a passenger in a Volkswagon van owned and operated by her husband which was struck from the rear by another vehicle owned by appellant Wemyss and being driven by appellant Griffin. In the collision Mrs. Coleman's head was snapped back with such violence that it struck a factory installed icebox located behind the passenger seat. The passenger seat was equipped with a combination seat belt which Mrs. Coleman was not wearing at the time.

Before trial the defendants employed a physician who performed a medical examination of Mrs. Coleman on their behalf. On deposition this physician testified that had Mrs. Coleman fastened her seat belt she probably would not have been pitched as far forward and backward as she was, and she probably would not have sustained injuries necessitating medical care. The trial court sustained a motion in limine barring the defendants from presenting any evidence related to the lack of use of a seat belt or its probable consequences. The principal issue on this appeal is whether this ruling was erroneous.

The jury found for the appellee, Mrs. Coleman, and awarded her damages against Wemyss and Griffin in the sum of $24,050.72. The jury verdict for Mrs. Coleman was itemized as follows:

| | | |
|---|---|---|
| 1) | Mental and physical suffering (past and future) | $      1.00 |
| 2) | Permanent impairment to her power to earn money | 15,000.00 |
| 3) | Reasonable medical and related expenses incurred | 4,664.72 |
| 4) | Future reasonable medical and related expenses | 2,500.00 |

| 5) | Wages or income lost | 1,885.00 |
| | TOTAL | $24,050.72 |

State Farm Mutual Automobile Insurance Co. carried the automobile insurance coverage on both the Wemyss and Coleman vehicles. Mrs. Coleman was covered by basic reparations benefits in her husband's policy, and Wemyss and Griffin were covered by liability insurance coverage provided by the same company.

The question whether that portion of Mrs. Coleman's claim which was paid or payable from basic reparations benefits should have been excluded from her claim as presented at trial against Wemyss and Griffin was not addressed by the court until after the verdict. The answer filed on behalf of Wemyss and Griffin made claim for credit or setoff against any judgment which might be obtained to the extent that basic reparations benefits were available to Mrs. Coleman. After judgment was entered the defendants moved the court to alter or amend the judgment by striking $10,000.00 of plaintiff's recovery as barred by KRS 304.39–060(2)(a), the section of the Motor Vehicle Reparations Act (MVRA) providing for limitation on tort recovery in certain specified instances.

Mrs. Coleman, in turn, was then permitted to file an amended complaint naming State Farm as a party and demanding judgment against State Farm in an amount equivalent to any setoff or credit against the judgment allowed to Wemyss and Griffin because of the MVRA.

The trial court held that Wemyss and Griffin were entitled to a setoff or credit against the plaintiff's judgment in the amount of $10,000.00, and reduced that judgment accordingly. But the trial court further held that Mrs. Coleman was entitled to judgment against her reparations obligor, State Farm, for such medical expenses and loss of wages as were proved at trial and covered by no-fault benefits, which had not yet been paid. The court entered an amended judgment as follows:

| 1) | Original judgment | $24,050.72 |
| | Setoff or credit to Wemyss and | |
| 2) | Griffin | 10,000.00 |
| | Subtotal | $14,050.72 |

| | Plaintiff's medical bills allowed in the jury verdict and covered by | |
| 3) | BRB | $ 4,548.72 |
| | Plaintiff's lost wages as awarded by the jury and covered by BRB (six weeks lost wages at $200/week less $530.56 previously | |
| 4) | paid) | 669.44 |
| | Subtotal | $ 5,218.16 |
| | TOTAL | $19,268.86 |

The court then entered final judgment in "the net sum of $19,268.86, to be assessed against State Farm and the defendants, Allen J. Wemyss and Joey A. Griffin in the amounts as set forth above."

The Court of Appeals has affirmed the decision of the trial court to exclude evidence related to the so-called seat belt defense. The Court of Appeals has reversed so much of the final judgment as provided Wemyss and Griffin a setoff or credit of $10,000.00, the maximum coverage for basic reparations benefits under Coleman's policy, ordering that the setoff or credit should be limited to the *accrued* benefits paid or payable at the time of trial. This would mean, in effect, that such amount as is deducted from the judgment against Wemyss and Griffin will be offset by an equal award against State Farm. The appellants have asked our Court for discretionary review to consider the following issues:

1) Did the trial court exclude relevant and competent evidence offered to prove that if Mrs. Coleman had fastened her seat belt her injuries would have been substantially less?

2) Did the trial court err when it refused to instruct the jury on the seat belt defense?

3) Did the trial court, and more so the Court of Appeals, err in refusing to order a $10,000.00 credit or set off against Mrs. Coleman's judgment against Wemyss and Griffin without further recoupment for basic reparations benefits from State Farm?

4) Did the trial court and Court of Appeals err in allowing Mrs. Coleman to file an amended complaint asserting a cause of action for basic reparations benefits against State Farm more than two years after the last payment of benefits?

## I. THE SEAT BELT DEFENSE

Both sides have made powerful arguments for and against requiring the use of seat belts as a public policy issue.

The appellants argue that "scientific studies show without equivocation that seat belts are effective safety devices" and "would reduce the severity of ... personal injuries," that a decision that "states that the negligent failure of a claimant to fasten an available seat belt would diminish a recovery for damages in which lack of a seat belt restraint played a part ... will be based upon sound public policy."

On the other hand the appellee argues with equal force "that the majority of people simply do not wear seat belts," and that the "failure of the Kentucky state legislature to adopt such a duty is evidence of the lack of public will to impose this duty upon the people of this state."

We consider that this argument about public policy begs the issue. The issue is not whether our Court believes that the law should require automobile occupants to wear seat belts, or should not. The issue is an evidentiary one, that is, did the defendants offer evidence against Coleman to prove contributory fault which was improperly excluded?

In *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), we adopted the principle of comparative negligence, stating that:

"Henceforth, where contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases contributory negligence will not bar recovery but shall reduce the total amount of the award in the proportion that the claimant's contributory negligence bears to the total negligence that caused the damages. The trier of fact must consider both negligence and causation in arriving at the proportion that negligence and causation attributable to the claimant bears to the total negligence that was a substantial factor in causing the damages." 673 S.W.2d at 720.

This formula for determining comparative negligence, and appropriate instructions, was extracted from the Uniform Comparative Fault Act, § 2, 12 U.L.A. Civil Procedural and Remedial Laws, Cum. Supp., now reported in the 1987 supplement at pp. 38–49. The Act uses the terms "negligence" and "fault" for purposes of determining comparative negligence as equivalent and interchangeable terms, as expressed in § 1 of the Uniform Comparative Fault Act (UCFA). In § 1 "fault" as applied to either claimant or defendant is defined as follows:

"(b) 'Fault' includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and *unreasonable failure to avoid an injury or to mitigate damages*. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." [Emphasis added.]

In the official "Comment" to the UCFA, in explaining the term "unreasonable failure to avoid an injury or to mitigate damages," the following is included which is pertinent to our case:

" 'Injury attributable to the claimant's contributory fault' refers to the requirement of a causal relation for the particular damage. Thus, negligent failure to fasten a seat belt would diminish recovery only for damages in which the lack of a seat belt restraint played a part, and not, for example, to the damage to the car." Cum.Supp. 1987, p. 41.

Thus failure to wear a seat belt is utilized as an example of conduct which may constitute contributory fault, falling within the term "unreasonable failure to avoid an injury," *if* there is proof that "the lack of a seat belt restraint played a part."

It is true, as argued by the appellee, that the appellee's negligence played no part in the motor vehicle collision. The jury has found that Griffin was to blame, and there is ample evidence to support that finding.

On the other hand, taking the evidence from the defendants' physician as true, there was a causal relation between the claimant's failure to wear a seat belt and the degree of her subsequent injury. We agree with the appellants that the concept of antecedent negligence, covered in the UCFA by the term "unreasonable failure to avoid an injury," falls in the same class of conduct as the doctrine of avoidable consequences, covered in the UCFA as "unreasonable failure to ... mitigate damages." UCFA, Sec. 1(b), *supra.*

■ Even before the advent of comparative negligence, our Court recognized the doctrine of avoidable consequences, applying it to a claimant's unreasonable failure to utilize recommended post accident medical treatment. *Blair v. Eblen,* Ky., 461 S.W.2d 370 (1970). We recognized that the doctrine of avoidable consequences, unlike contributory negligence which then would bar a claim, "serves to mitigate the damages ... to the extent the patient's injury was aggravated or increased by his own negligence." 461 S.W.2d at 372.

The same principle should apply to the antecedent negligence of the plaintiff, if any, to the extent the injury was aggravated or increased by his own negligence.

The problem here resolves itself to a question of how should our law deal with negligence on the part of the claimant, antecedent or subsequent, which is not the legal cause of the occurrence initiating the injury, but which is antecedent or subsequent negligence on the part of the claimant which enhances the injury. Negligence calls for an apportionment where it is "found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues." *Restatement (Second) of Tort,* § 465, Comment c. We note that the *Restatement* states a caveat:

> "There must, of course, be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation."

■ We agree with appellee's basic legal premise that the tortfeasor takes the claimant as he finds him and is entitled to neither credit nor setoff against the amount of the claimant's damages because of preexisting physical conditions which make the claimant more susceptible to injury, or to greater injury, than would have been the case with better health. But this is a different principle from the concept of "unreasonable failure to avoid an injury or to mitigate damages" as utilized in § 1 of the Uniform Comparative Fault Act, in the *Restatement (Second) of Torts,* or in *Blair v. Eblen, supra.*

We have already adopted § 2 of the Uniform Comparative Fault Act in *Hilen v. Hays, supra,* and it follows that in this case we should adopt the definition of "fault" as utilized in § 1 of that Act, so that the fabric of our law shall be whole, rather than inconsistent and conflicting.

We recognize that *Reda Pump Co. v. Finck,* Ky., 713 S.W.2d 818 (1986) conflicts with the UCFA, but our decision in *Reda Pump* stemmed from the express language of a statute, KRS 411.320(3). In the present case there is no conflicting statute.

KRS 189.125 is our only statute related to seat belts. KRS 189.125 requires that seat belt anchors be provided in new passenger vehicles, and also provides that a "child restraint system" shall be utilized by any "resident parent or legal guardian of a child, forty inches (40″) in height or less, when transporting his child in a motor vehicle owned by that parent or guardian." Curiously, the statute further specifies that "there shall be no penalty" for its violation. We need not get involved in trying to interpret the meaning of this statute, because, whatever it means, except as to a small child as defined by the words of the statute, it is silent on the legal duty to utilize a seat belt restraint. We cannot construe this silence as a legislative expression of public policy for or against the use of a seat belt restraint.

The appellee argues that the sole cause of the collision was Griffin's negligence, and that a person should not be called upon to anticipate an accident caused by someone else's negligence. The opposite side of

the same coin is presented by the so-called "second impact" cases which recognize the liability of an automobile manufacturer when the vehicle is unreasonably unsafe because of a defect in design or construction, a defect which causes or enhances injury resulting from a collision caused by driver negligence. If Mrs. Coleman had been wearing a seat belt which failed to restrain her because of defect in design or construction, she would have a cause of action against the automobile manufacturer upon proof that such defect was a substantial contributing factor in her injury. In *Nichols v. Union Underwear Co., Inc.,* Ky., 602 S.W.2d 429 (1980), we held that, upon satisfactory proof that clothing was unreasonably unsafe because of a high degree of flammability, a jury could find that a company engaged in the manufacture of such clothing was liable for burns sustained when the clothing was negligently set on fire by another person. The underlying fault principle that would apply to defective manufacture of a seat belt and to negligent failure to utilize a seat belt is essentially the same, except, of course, that the manufacturer of a defective product is presumed to know the characteristics of the product whereas the consumer's liability for failure to utilize a safety device turns on a jury's decision as to whether the consumer negligently failed to exercise ordinary care in the circumstances presented. *Nichols v. Union Underwear Co., supra.*

█ In the absence of statute it is not our function to declare that the law requires, or that it does not require, the occupants of an automobile to wear seat belts. On the contrary, we decide only that, as with any other question of contributory fault, if the defendant introduces relevant and competent evidence from which it can be reasonably inferred: (1) that the claimant's failure to utilize an available seat belt was contributory fault in the circumstances of the case, and (2) that such contributory fault, if any, was a substantial factor contributing to cause or enhance the claimant's injuries, the defendant is entitled to have the question of contributory fault submitted to the jury in conformity with the principles set out in the Uniform Comparative Fault Act.

The appellee, Coleman, claims that even if the seat belt defense can be a jury issue in a proper case, that in the present case the appellants failed to offer relevant and competent evidence sufficient to raise a jury issue. The defendants' evidence consisted of the testimony of an examining physician employed by the defendants who testified to the conclusion that had Mrs. Coleman "worn a seat belt she probably ... would not have been pitched as far forward and would not have had as far to come back," and "she probably would not have had the injuries necessitating medical care had she had the seat belt fastened."

Proof of the doctor's competency to give such a testimony rested upon some brief leading questions about his familiarity "with the current and modern medical literature," and was, at best, debatable. However, the decision as to whether a witness is qualified to give expert testimony rests initially in the sound discretion of the trial court. *Kentucky Power Co. v. Kilbourn,* Ky., 307 S.W.2d 9 (1957); *Alexander v. Swearer,* Ky., 642 S.W.2d 896 (1983). In this case the decision not to admit evidence regarding the seat belt defense was made in response to a motion in limine to suppress such evidence regardless of competency. This was error, and it will remain for the trial court to decide the threshold question of whether the witness was qualified by sufficient training, special knowledge, or skill to testify on this subject.

█ Appellants' Brief is replete with citations to so-called "scientific studies" regarding the effectiveness of seat belts as safety devices. These studies were *not* introduced at the trial level and would not qualify as admissible evidence absent testimony as to their scientific authenticity and reliability from a credible source. Certainly our Court is not prepared to take judicial notice of the authenticity and reliability of the publications referred to in the Brief. For instance, appellants' brief refers to a "front page article in the Wall Street Journal." This was inappropriate in the brief and would be improper at trial. We disap-

prove of those references in the Brief to any material which was not introduced as evidence in the trial court, and point out that such material will not be admissible in the trial court unless first appropriately authenticated as a scientifically reliable source. We have disregarded this material in the Appellants' Brief in making our decision.

Assuming that the appellants are able to produce relevant and competent evidence in support of the seat belt defense, the next question is what are the appropriate instructions to submit the issues raised by such evidence to the jury?

The appellants submitted an instruction which specifically designated failure to fasten an available seat belt as breach of a legal duty. On the other hand, the appellee claims that the statutory duties in KRS Chapter 189, Traffic Regulations, are the only measure of the standard of conduct for use of a motor vehicle, and that there should be no instruction where there is no statute.

■ As we have previously discussed, failure to utilize an available seat belt does not qualify as breach of a statutory duty even though it may be a breach of the general duty to exercise reasonable care for one's own safety. The duty to exercise ordinary care commensurate with the circumstances carries with it the same responsibility for damages sustained as a result of its breach regardless of whether there is a statute imposing the standard of conduct or whether a jury has determined the breach. And, of course, the duty to exercise ordinary care for one's own safety is no different from the duty to exercise ordinary care for the safety of others.

"The concept of liability for negligence expresses a universal duty owed by all to all." *Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985).

There are many aspects of the use of a motor vehicle which may represent breach of the duty of ordinary care which are not dependent upon a statute, as, for instance, riding as a guest passenger with a motorist known to be intoxicated. *MacDaniel v.*

*Douglas Motor Co.*, Ky., 438 S.W.2d 329 (1969).

■ The "general duty," breach of which gives rise to liability, is the duty to exercise ordinary care, and properly drafted instructions utilize "specific duties" as imposed by statutes only as amplification of the "general duty," and not as the source of such duty. Where there is a statutory duty, the usual instruction, after explaining the general duty, will then specify that such general duty "includes" certain enumerated specific duties. *See* illustrative instructions in Palmore, *Kentucky Instructions to Juries*, Vol. 2, Chapter 16, Automobiles.

The reason for expanding on the general duty by including statutory duties, if there are any, lies in the fact that breach of a duty imposed by statute or ordinance is negligence per se if the harm occasioned incident to violation of the statute is that type of harm which the statute was intended to prevent. *See Kentucky Digest* 2d, Vol. 17, *Negligence*, § 6, and cases cited therein. The proper and appropriate method for advising the jury of statutory duties is to take judicial notice of the same and incorporate them in the instructions as "specific duties" included within the "general duty ... to exercise ordinary care." Palmore states:

"There is good argument for the position that the 'duty' instructions in automobile accident cases should be confined to the general duty of ordinary care, ... and such additional specific duties as are prescribed by statute, leaving it to counsel in their summations to suggest the subordinate or component duties encompassed by ordinary care. In any event, the trend in this jurisdiction is away from the so-called 'concrete' instruction." Palmore, *supra*, § 16.56, Comment.

In *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981), we reversed because of error in instructions which specifically enumerated duties of the defendant hospital based upon an industry code, holding that this method of instruction "gives undue prominence to facts and issues ... the instruction should not make a rigid list of ways in which a

defendant must act in order to meet his duty." Thus, the enumeration of specific duties is the exception to the rule, reserved for statutory duties, and the "general rule for the content of jury instructions" is to couch same in the terms of the general duty, to "provide only the *bare bones* of the question for jury determination, leaving this 'skeleton' to 'be fleshed out by counsel on closing argument.'" *Id.* at 136.

■ Applying these principles to the seat belt defense where there is no statutory duty, a proper instruction will not specifically refer to a seat belt defense, but will state the general duty to exercise ordinary care for one's own safety, leaving it to the jury to decide from the evidence whether the failure to utilize an available seat belt was a breach of that duty in the circumstances of this case, and, if so, whether such breach was a substantial factor contributing to cause or enhance the claimant's injuries.

In short, we recognize the potential use of the seat belt defense as an evidentiary matter for the jury's consideration dependent upon the evidence in the particular case, and we express no opinion as to whether the occupant of an automobile should or should not be required to wear a seat belt as a matter of law.

## II. LIMITATION ON TORT RECOVERY REQUIRED BY THE MOTOR VEHICLE REPARATIONS ACT

■ Once again we are confronted by a procedural nightmare generated by the limitations on tort liability provided in the MVRA. KRS 304.39–060(2)(a) denies Mrs. Coleman the right to pursue a claim for damages based on tort liability against Wemyss and Griffin "to the extent the basic reparation benefits provided in this subtitle are payable therefor." Under this section to the extent that Mrs. Coleman was entitled under her husband's policy to collect basic reparations benefits covering lost wages and medical expenses paid or payable before the time of trial, upon proper objection the trial court should have refused instructions permitting the jury to award damages duplicating these expenses.

*Carta v. Dale,* Ky., 718 S.W.2d 126 (1986). However, instead of interposing an objection to the trial court's instructions, the defendants elected as an alternative to pursue by post trial motion a credit or setoff against the judgment, and then compounded the confusion by urging that the concept of a setoff for basic reparations benefits should be expanded to include the jury's award to Mrs. Coleman for "Future reasonable medical and related expenses," and "Permanent impairment to her power to earn money." The appellants persuaded the trial court to enter a credit or setoff against the judgment in the sum of $10,-000.00, the maximum potential basic reparation benefits coverage provided in the Coleman's policy.

The Court of Appeals corrected this error by eliminating the credit for future losses and limiting the credit to accrued medical expenses and lost wages, a proper application of the payment scenario set up by KRS 304.39–210, *Obligor's duty to respond to claims,* which provides in pertinent part:

"(1) Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred."

The definitions of "medical expense ... incurred" and "loss of income from work" in KRS 304.39–020(5) are limited to amounts already "incurred," and under KRS 304.39–130 the amount for work loss is further limited "not to exceed $200" per week.

Tort liability for damages is denied by the MVRA only for items of damages covered by basic reparations benefits. The statutory definitions of these items is explicit, and does not otherwise translate into elements of damages for tort liability. There is no foundation in the statute for tying wage loss under the MVRA to the jury award for "permanent impairment to her power to earn money." This element of tort recovery is neither tied to work loss, nor is it duplication of work loss for which basic reparation benefits accrue.

Likewise, appellee's award for "future reasonable medical and related expenses"

does not represent duplication of any item of medical expense for which the right to basic reparations benefits had accrued at the time of trial.

The defendants were not entitled to a setoff or a credit against the judgment for the jury award of tort damages for future medical expenses or impairment of earning power, and the Court of Appeals properly corrected the credit or setoff which had been allowed by the trial court.

The appellants insist that our holding in *Couty v. Kentucky Farm Bureau Mutual Ins. Co.*, Ky., 608 S.W.2d 370 (1981) permits the no-fault insured to recover for basic reparation benefits from the basic reparations' obligor for future benefits as well as accrued benefits, and they reason from this argument that they are entitled to a credit or setoff for future losses as well as past losses. *Couty* held that recovery for *one type* of basic reparations benefit, "survivor's replacement services loss," was not limited to expenses which the insured had already incurred, and also included "survivor's replacement services loss" which it is reasonably probable would be incurred in the future. We need not debate the soundness of the *Couty* opinion in this case, because the decision in *Couty* is expressly stated to be an *exception* to the rule, an exception which applies to "survivor's replacement services loss" but not to work loss or medical expenses. *Couty* reached this result by considering the statutory language in KRS 304.39–210, the "loss accrues" language quoted *supra,* contrasting it with the different language in the parent act (14 U.L.A., Civ.Pro. & Rem. Laws, § 23(a)), and reasoning that since the precise terms, "survivor's economic loss" and "survivor's replacement services loss," were omitted from KRS 304.39–210, a *different* rule would apply. Thus we have a rule permitting a basic reparations insured present recovery of future losses from the basic reparations obligor for "survivor's replacement services loss," whereas otherwise our MVRA limits recovery for basic reparations benefits to accrued losses. A close reading of the *Couty* case establishes that it disproves

rather than supports the appellants' contention in this respect.

The appellants' final contention is that the trial court erred in permitting Mrs. Coleman's post verdict amended complaint against State Farm seeking recoupment for any basic reparation benefits which would be deducted from the verdict against Wemyss and Griffin. Because a deduction was first effected, there is no double recovery. Because State Farm was the liability carrier for Wemyss and Griffin as well as the no-fault carrier for Coleman, State Farm was an active participant in this case from the beginning. Therefore, we affirm the Court of Appeals and adopt its decision that, for the reasons stated therein, the trial court correctly applied CR 15.03 to the facts in this case. On remand the credit allowed to the appellants can be no greater than the basic reparations benefits paid or payable to Mrs. Coleman on her amended complaint against State Farm.

The jury verdict establishing the tort liability of Wemyss and Griffin has not been questioned on this appeal, and is affirmed. Likewise, the amount of the award to Mrs. Coleman for damages has not been questioned on this appeal, and is affirmed. The decision of the trial court and the Court of Appeals regarding the seat belt defense is reversed, and the case is remanded to the trial court for a new trial at which time the defendants shall be afforded an opportunity to prove the seat belt defense by competent evidence, and, if substantial evidence is presented to create a jury issue, the trial court shall then submit this issue to the jury under an appropriate instruction advising the jury that Wemyss and Griffin have been found at fault and permitting the jury to decide whether there should be an apportionment based on comparative fault.

STEPHENS, C.J., and GANT, LAMBERT and LEIBSON, JJ., concur.

VANCE, J., concurs by separate opinion.

STEPHENSON, J., concurs in results only, and would reverse for a new trial on all issues.

WINTERSHEIMER, J., concurs in results only.

VANCE, Justice, concurring.

I concur in the result reached by the majority. I believe, however, that the opinion is likely to be construed by the bar as an endorsement of the Uniform Comparative Fault Act when that is not really the intention of the court.

Kentucky has not enacted the Uniform Comparative Fault Act, and this court in *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), was careful to point out that we express no opinion on the application of other sections of the act, leaving each other issue to be decided upon a case-by-case basis.