OWENS CORNING FIBERGLAS CORPORATION, Appellant,

v.

Walter PARRISH, Shirley Parrish and James Coyle, Appellees.

No. 1998–SC–0820–DG.

Supreme Court of Kentucky.

Oct. 25, 2001.

As Modified Nov. 7, 2001.

John L. Dotson, Louisville, Counsel for Appellant.

William Reeder Kenealy, Segal, Sales, Stewart, Cutler & Tillman, Kenneth L. Sales, Joseph D. Satterley, Sales, Tillman & Wallbaum, Louisville, Marc Weingarten,

Steve Wilson, Greitzer & Locks, Philadelphia, PA, Counsel for Appellees.

KELLER, Justice.

## I. ISSUES

These asbestos product liability cases, which the circuit court consolidated for trial, present two issues for our consideration.

Parrish and Coyle sought damages from asbestos-manufacturer Owens Corning Fiberglas Corporation ("Owens Corning"), after they allegedly contracted asbestosis, a respiratory disease caused by the inhalation of asbestos fibers. But, while Appellees sought recovery only for their alleged asbestosis, the trial court allowed the jury to consider Appellees' smoking histories in determining their comparative fault.[1] The jury consequently allocated fifty (50%) percent of the total fault to each Appellee. Since smoking was a separate cause of harm to Appellees, were these comparative fault instructions appropriate? Because the evidence showed that Appellees' inhalation of asbestos fibers and their smoking combined to produce a single indivisible harm—lung impairment and shortness of breath—we hold that the trial court properly allowed the jury to determine Appellees' comparative fault.

Before trial, Parrish settled an asbestos-based worker's compensation claim with his employer, Louisville Water Company ("LWC"). While LWC never became a party to Parrish's lawsuit, the trial court included LWC within its comparative fault instructions and the jury found LWC responsible for ten percent (10%) of Parrish's damages. Should the trial court have allowed apportionment against LWC? Because the settlement of this asbestos-related worker's compensation claim was tantamount to a settlement with a nonparty against whom a claim has been asserted, we hold that the trial court properly allowed the jury to apportion fault against LWC.

## II. FACTS

Parrish[2] and Coyle filed separate actions against asbestos manufacturer Owens Corning and numerous other defendants[3] seeking compensatory and punitive damages for injuries that they claimed to have suffered from repeated workplace exposure to asbestos. Each Appellee sought damages for asbestosis and its resulting shortness of breath and for their increased future risk of developing cancer. Before trial, all defendants except Owens Corning either settled or were dismissed as parties. The trial court then, appropriately, consolidated the cases for trial.

The medical evidence at trial established that the lung disease asbestosis is caused solely by exposure to asbestos, is characterized by the primary symptom of shortness of breath, and, as a progressive disease, may eventually result in death by suffocation. Even though the disease asbestosis itself cannot cause cancer, inhalation of asbestos fibers may increase the risk of lung cancer in other ways, especially when combined with the synergistic effect of smoking. The evidence further es-

---

1. We use the terms "negligence" and "fault" for purposes of determining comparative fault as equivalent and interchangeable terms. *See infra* note 13.

2. Parrish's wife, Shirley Parrish, was also a party to this action for the purpose of asserting her claim for loss of consortium. Shirley

Parrish did not appeal from the jury's verdict for Owens Corning as to her claim.

3. Coyle's original complaint named fifteen (15) defendants and he added one (1) additional defendant by amended complaint. Parrish's complaint named sixteen (16) defendants.

tablished that both Parrish and Coyle had regularly smoked tobacco products and that their past smoking also may have caused harm to their lungs, resulting in shortness of breath, and placed them at an increased risk for cancer.

Other evidence showed that Parrish, while employed with LWC and working with asbestos, did not consistently wear a protective mask. In his defense, Parrish testified that his employer did not offer him a mask until late in his career and that even then he could not wear a mask for long before the mask's filters would become clogged with dust and he would have to remove it.

Before trial, Parrish settled an asbestos-based worker's compensation claim with LWC. Although LWC never became a party to Parrish's lawsuit, the trial court included LWC in a comparative fault instruction and allowed the jury to allocate fault for Parrish's damages to LWC.

At the end of a several-day trial, the jury returned verdicts:

- finding that both Parrish and Coyle "were exposed to asbestos-containing products manufactured" by Appellant Owens Corning and were "thereby caus[ed] ... to contract an asbestos-related disease;"
- awarding Parrish and Coyle damages of $55,000.00 each;[4]
- finding that Parrish and Coyle each violated his general duty "to exercise that degree of care for his own health and safety as expected of a reasonably prudent person;" and
- allocating fault for the damages awarded Parrish and Coyle as follows:[5]

---

4. The jury awarded Coyle and Parrish $50,000 each for future pain and suffering and, as a separate element of damages, $5,000 each for an "increased likelihood of contracting cancer." The trial court should not have instructed the jury regarding this increased risk of future harm as a separate element of damages, and should have allowed the jury to consider this increased risk only in assessing damages for future pain and suffering. *Capital Holding Corp. v. Bailey*, Ky., 873 S.W.2d 187, 195 (1994) ("A recovery for an increased risk of future harm, when such risk is established as a reasonable likelihood, is not a new element of damages but proof that the jury should consider in compensating for future physical pain and mental suffering, for future impairment or destruction of earning power, and, if there is evidence to support it, for future medical expenses." *Id.*). The parties do not raise this improper, separate damage award for the increase of future harm as an issue in this appeal.

5. In addition to the fault of Owens Corning and LWC and the comparative fault of either Parrish or Coyle, the trial court's comparative fault instructions also allowed the jury to allocate fault among all dismissed parties, nonparties that had settled with either Parrish or Coyle and even one party who had never been named a party to the lawsuit and had not settled with either Coyle or Parrish. The jury apportioned fault against one of these parties, Owens–Illinois, Inc. We first note that the instructions should not have permitted the jury to allocate fault to a nonsettling nonparty. KRS 411.182; *Baker v. Webb*, Ky.App., 883 S.W.2d 898 (1994). Next, we note that the instructions did not require the jury to find *any* fault on the part of the dismissed parties or settling nonparties before it allocated a percentage of the total fault to them. Fault may not be properly allocated to a party, a dismissed party or settling nonparty unless the court or the jury first finds that the party was at fault; otherwise, the party has no fault to allocate. KRS 411.182; *Floyd v. Carlisle Const. Co., Inc.*, Ky. 758 S.W.2d 430, 432 (1988) ("If there is an active assertion of a claim against joint tortfeasors, and *the evidence is sufficient to submit the issue of liability to each*, an apportionment instruction is required whether or not each of the tortfeasors is a party-defendant at the time of trial." *Id.* (emphasis added)). The mere fact that a party has been sued or has settled does not permit the factfinder to allocate part of the total fault to that party. As the instructions required no finding of fault on the part of the

AS TO COYLE:

| | |
|---|---|
| Coyle | 50% |
| Owens–Illinois, Inc. | 25% |
| Owens Corning | 25% |

AS TO PARRISH:

| | |
|---|---|
| Parrish | 50% |
| Owens–Illinois, Inc | 20% |
| Owens Corning | 20% |
| Louisville Water Co. | 10% |

The jury also returned a verdict for Owens Corning on Appellees' punitive damages claims. Pursuant to the verdicts, the trial court entered judgments against Owens Corning in favor of Parrish and Coyle.

Parrish and Coyle appealed these judgments to the Court of Appeals and contested the jury's finding that they shared the fault for their conditions. They argued that the trial court improperly allowed the jury to allocate fault to them on the basis of their smoking histories and, in Parrish's case, because of his failure to wear a mask when working with asbestos. Parrish also contested the jury's apportionment of fault to his employer and argued that fault may be apportioned only against an employer who is a party to the action.

The Court of Appeals held that, with respect to Appellees' asbestosis claims,[6] the trial court erred when it allowed the jury to consider either Appellee's smoking or Parrish's failure to wear a mask as comparative fault. The Court of Appeals also found reversible error in the trial court's instructions allowing the jury to

apportion fault to Parrish's employer. Accordingly, the Court of Appeals reversed the judgments of the Jefferson Circuit Court and remanded the cases for retrial. We find no error by the trial court with respect to either issue before this Court and reverse the decision of the Court of Appeals.

## III. COMPARATIVE FAULT INSTRUCTIONS

Owens Corning argues before this Court that the evidence concerning Appellees' smoking and Parrish's failure to wear a mask justified both the trial court's decision to instruct the jury concerning comparative fault and the jury's apportionment of fault to Appellees.

Coyle and Parrish contend that the trial court's decision to instruct the jury regarding their comparative fault was both legally and factually erroneous. Specifically, they argue: (1) Under Kentucky's Product Liability Act,[7] the factfinder may consider as comparative fault only a plaintiff's use or misuse of the product itself[8] and, because neither their smoking nor Parrish's failure to use a mask constituted misuse of Owens Corning's asbestos products, their conduct cannot be comparative fault; and (2) Since asbestosis is caused only by the inhalation of asbestos fibers, no causal connection exists between smoking cigarettes

---

dismissed parties and settling nonparties included in the apportionment instructions, they were incorrect.

6. Because Parrish filed suit after the effective date of KRS 411.182, the Court of Appeals ruled that the principles of comparative negligence under the statute would apply. Since smoking combined with exposure to asbestos has a synergistic effect which increases the likelihood of contracting lung cancer, the Court of Appeals held that the jury could consider Parrish's smoking in assessing his comparative fault as to that claim for damages. We have already explained that this

analysis improperly treats an increased risk of cancer as a separate element of damages. *See supra* note 4.

7. KRS 411.300–.340

8. "In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances *in his use of the product,* and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective." KRS 411.320(3) (emphasis added).

and their development of asbestosis. Parrish also argues that the evidence concerning his failure to wear a protective mask was insufficient to support a comparative fault instruction. Coyle also contends that the trial court should not have given comparative fault instructions regarding his conduct because he filed suit before the effective date of KRS 411.182. We address each argument in turn and hold that the evidence justified the comparative fault instructions given by the trial court.

This Court first established comparative fault as part of Kentucky common law in *Hilen v. Hays*,[9] and in so doing, we extracted suggested jury instructions from the Uniform Comparative Fault Act ("the Act")[10]:

> In order to apply this rule in the present case, we extract the following jury instructions from the Uniform Comparative Fault Act, § 2, 12 U.L.A., Civ.Proc. & Rem.Law, 39 (Cum.Supp.1984), for the jury to use in the event it finds both parties at fault:
>
> '(a) ... the court ... shall instruct the jury to answer special interrogatories ... indicating:
>
> (1) the [total] amount of damages [the] claimant would be entitled to recover if contributory fault is disregarded; and
>
> (2) the percentage of the total fault ... that is allocated to [the] claimant [and] defendant, [the total being 100%].

(b) In determining the percentages of fault, the [jury] shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.'[11]

This Court again turned to the Act in *Wemyss v. Coleman*,[12] where we observed that "[t]he Act uses the terms 'negligence' and 'fault' for purposes of determining comparative negligence as equivalent and interchangeable terms ..."[13] and we adopted its definition of "fault"[14]:

> "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.[15]

When this Court first established comparative fault as part of the common law, the statutory contributory negligence provisions of Kentucky's Product Liability Act barred a plaintiff from recovery when that plaintiff was negligent in his or her use of the product.[16] But the legislature, subse-

---

**9.** Ky., 673 S.W.2d 713 (1984).

**10.** Uniform Comparative Fault Act, 12 U.L.A. 123 (Cum.Supp.2000).

**11.** *Hilen v. Hays, supra* note 9 at 720.

**12.** Ky., 729 S.W.2d 174, 177 (1987).

**13.** *Id.*

**14.** *Id.* at 178 ("We have already adopted § 2 of the Uniform Comparative Fault Act in *Hi-*

*len v. Hays* ... and it follows that in this case we should adopt the definition of 'fault' as utilized in § 1 of that Act, so that the fabric of our law shall be whole, rather than inconsistent and conflicting." *Id.*)

**15.** Uniform Comparative Fault Act *supra* note 10 at § 1(b).

**16.** *See* KRS 411.320(3); *Reda Pump Co., a Div. of TRW, Inc. v. Finck*, Ky., 713 S.W.2d 818 (1986) ("We resolve the issue now by

quent to *Hilen* and *Wemyss,* removed this vestige of contributory fault when it codified comparative fault:

(1) In all tort actions, *including products liability actions,* involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.[17]

This enactment repealed KRS 411.320(3), and in products liability actions, a plaintiff's own negligence with respect to the product itself is no longer a complete bar to recovery but is instead governed by the same comparative fault principles which govern the fault of any party in a tort action.[18]

■ In codifying comparative fault, the legislature, like this Court in *Hilen,* emphasized § 2 of the Act. The comparative fault statute, however, did not define "fault." We assume, however, that the legislature was aware of our adoption of the definition in *Wemyss,* and because the legislature partially codified the other provisions of the Act [19] which are consistent

---

holding that K.R.S. 411.320(3) absolutely bars recovery in products liability options where the plaintiff is contributorily negligent and his negligence is a substantial cause of the occurrence which caused his injury, . . . ." *Id.* at 821.).

**17.** KRS 411.182 (emphasis added).

**18.** *See* KRS 411.182(1); *Caterpillar, Inc. v. Brock,* Ky., 915 S.W.2d 751, 753 (1996) ("The language of the comparative fault statute . . . is straightforward and admits, with ease, to only one construction: that in all tort actions, including products liability actions, fault is to be apportioned among all parties to each claim." *Id.*); *DeStock No. 14, Inc. v. Logsdon,* Ky., 993 S.W.2d 952, 958 (1999) ("KRS 411.182(1) specifically provides that apportionment applies to products liability actions. We held in *Caterpillar* that this language impliedly repealed the contributory negligence provision in KRS 411.320(3), a statute which pre-existed the enactment of KRS 411.182." *Id.*).

**19.** Compare Kentucky's comparative fault statute with the UNIFORM COMPARATIVE FAULT ACT, *supra* note 10 at §§ 2(a), (b) & (c) and 6. The General Assembly incorporated these

with the definition we adopted, we believe it reasonable to further assume that they acquiesced in our definition of "fault." Accordingly, the definition of "fault" this Court adopted in *Wemyss* remains applicable to comparative fault in all tort cases, including product liability actions.

■■■■ In light of our definition of "fault," we do not agree with Appellees' argument that a plaintiff's comparative fault in products liability cases can only involve the plaintiff's use or misuse of the product. "[Any] ... act[ ] or omission[ ] that [is] in any measure negligent or reckless toward the person ... of the actor ..." will suffice if the evidence shows a causal connection between the plaintiff's act or omission and the plaintiff's injury or damages.[20] Our broad interpretation of fault does not limit the gambit of potential acts or omissions which may constitute comparative fault to uses and misuses of the product, and we specifically reject Appellees' argument that KRS 411.320(3) limits a plaintiff's comparative fault to use of the product. As stated earlier, the legislature's enactment of the comparative fault statute abolished the statutory contributory negligence defense in products liability actions.[21] Appellees attempt to resurrect KRS 411.320(3) as a limitation upon the scope of conduct contemplated in the later-enacted comparative fault statute. If the

legislature had intended to place such a limitation on KRS 411.182's application to product liability cases, we believe the comparative fault statute itself would have provided this limitation. Accordingly, we hold that the comparative fault statute does not limit the plaintiff's fault to use of the product.

■■■ Appellee Coyle correctly observes that, because he filed his action prior to its effective date,[22] Kentucky's comparative fault statute, KRS 411.182, did not require the trial court to instruct the jury regarding his comparative fault.[23] We disagree, however, with Coyle's conclusion that the trial court's decision to instruct the jury as to comparative fault was error because Kentucky *Common Law* required such instructions.

After *Hilen*, comparative fault existed in Kentucky as part of the common law at the time Coyle filed suit [24] and *Wemyss*—also decided prior to the filing date—had defined the term "fault" for the purpose of comparative fault. Thus, while KRS 411.182 does not apply to Coyle's claim, the common law this Court identified in *Hilen* required a comparative fault instruction for any acts or omissions connected to his claim for damages which did not involve the use of Owens Corning's

---

provisions of the Act almost verbatim into KRS 411.182—one notable exception being that portion of § 2(c) which provides for "joint-and-several liability."

**20.** UNIFORM COMPARATIVE FAULT ACT *supra* note 10 at § 1(b).

**21.** *See supra* note 16.

**22.** Coyle filed his action on July 14, 1988, the day before KRS 411.182 became effective. *See* KRS 411.182. *See also* KRS 446.080(3) ("No statute shall be construed to be retroactive, unless expressly so declared." *Id.*).

**23.** *Ingersoll–Rand Co. v. Rice*, Ky.App., 775 S.W.2d 924, 930 (1988) ("But because KRS 411.182 does not have retroactive application pursuant to KRS 446.080(3), the trial court will have to try this case the same as if the new statute did not exist." *Id.* (citation omitted)).

**24.** *Hilen v. Hays, supra* note 9 at 720 ("[T]he comparative negligence doctrine shall apply to: (1) The present case; (2) All cases tried or retried after the date of filing of this opinion; and (3) All cases pending, including appeals, in which the issue has been preserved." *Id.*).

product.[25] Coyle's smoking obviously did not involve his use of asbestos, and therefore, it may be the basis of a comparative fault instruction under *Hilen* even though KRS 411.182 may not be applied retroactively.

Appellees correctly submit that the undisputed medical evidence established that exposure to asbestos fibers is the sole cause of asbestosis and that smoking alone can never result in asbestosis. They further observe correctly that, because Appellees' complaints sought damages only for their exposure to "asbestos-containing products," the trial court's instructions limited any award of damages accordingly.[26] Therefore, they posit that the trial court's instructions should not have permitted the jury to apportion fault to them for conduct which caused other, distinct injuries. We disagree with this conclusion.

While asbestosis is a restrictive disease of the lungs, and smoking causes distinct obstruction pulmonary diseases, *e.g.*, emphysema or bronchitis, the trial evidence established that Appellees' exposure to asbestos and their smoking combined to produce a single result or harm, *i.e.*, decreased lung function manifesting itself in shortness of breath. Appellees did not introduce sufficient evidence in this case[27] to allow the factfinder a logical and reasonable basis to apportion this single harm—shortness of breath—between those separate causes.[28] In fact, the medical experts

**25.** Under the common law at the time Coyle filed his claim, *see Reda Pump Co., a Div. of TRW, Inc. v. Finck, supra* note 16, if Coyle's own negligence with respect to his injuries had stemmed from his use or misuse of the product itself, KRS 411.320(3) would have barred him from any recovery because of his contributory negligence. Because we agree that Coyle's smoking did not involve use or misuse of the product itself, apportionment of fault to Coyle would be governed by the common law principles of *Hilen* and *Wemyss* rather than KRS 411.320(3).

**26.** Under Instruction No. 1, the liability instruction for both Coyle and Parrish, the jury was informed that "Plaintiffs ... claim that [they] were exposed to asbestos-containing products manufactured by [Owens Corning], thereby causing each of them to contact an asbestos-related disease." *Id.;* Pursuant to Instructions No. 3 (Parrish) and No. 4 (Coyle), the jury was instructed that, if it found for Coyle or Parrish, it should award "such sum or sums as you believe from the evidence will fairly and reasonably compensate" for such damages "sustained ... as a direct result of exposure to asbestos...." *Id.;* Instructions No. 7 (Parrish) and No. 8 (Coyle), the apportionment instructions, directed the jury to "determine ... what percentage of [Coyle's or Parrish's] injury was attributable to [his] use of or exposure to asbestos-containing product...." *Id.;* In the Verdict Forms C (Parrish) and D (Coyle), the jury awarded each Appellee $50,000 for "Mental or physical pain and suffering sustained and which you reasonably expect in the future as a direct result of exposure to asbestos...." *Id.* However, Instruction No. 6, Questions No. 1 and 2, ask the jury whether they "believed from the evidence that the [Appellees] failed to exercise ... [ordinary] care for [their] own health and safety ..., and that such failure was a substantial factor in causing [their] injur[ies]?" *Id.*

**27.** One court, however, has suggested that there may be a basis for an apportionment of damages between asbestosis and smoking caused diseases. *Rothermel v. Owens Illinois, Inc.*, 24 Phila. 332, 16 Pa. D. & C.4th 20 (Common Pleas Ct. of Philadelphia Co., 1992) ("Although they have an additive effect, asbestos exposure causes asbestosis, which is a restrictive disease; and cigarette smoking, causes emphysema or bronchitis, which are obstructive diseases. They are separate diseases and can be measured separately." *Id.* at 336.). The evidence in this case, however, provided no basis, scientific or inferential, for separate measurements.

**28.** *See* Restatement (Second) of Torts § 433A, comment d:

There are other types of harm which, while not so clearly marked out as severable into distinct parts, are still capable of

made no attempt to do so.[29] Thus, while Appellees' exposure to asbestos and their smoking are distinct causes, they did not produce either distinct harms or a single harm capable of apportionment between the distinct causes. The trial evidence did not permit the jury to determine the proportion of lung impairment caused exclusively by Appellees' asbestos exposure or exclusively by Appellees' smoking and, consequently, the jury had no basis to apportion Appellee's lung impairment damages between the two causes.[30] An

---

division upon a reasonable and rational basis, and of fair apportionment among the causes responsible. Thus, where the cattle of two or more owners trespass upon the plaintiff's land and destroy his crop, the aggregate harm is a lost crop, but it may nevertheless be apportioned among the owners of the cattle, on the basis of the number owned by each, and the reasonable assumption that the respective harm done is proportionate to that number. Where such apportionment can be made without injustice to any of the parties, the court may require it to be made.

Such apportionment is commonly made in cases of private nuisance, where the pollution of a stream, or flooding, or smoke or dust or noise, from different sources, has interfered with the plaintiff's use or enjoyment of his land. Thus where two or more factories independently pollute a stream, the interference with the plaintiff's use of the water may be treated as divisible in terms of degree, and may be apportioned among the owners of the factories, on the basis of evidence of the respective quantities of pollution discharged into the stream. *Id. See also Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 528 A.2d 947, 949 (1987) ("[T]he burden of proving apportionment rests on the party seeking it." *Id.*); Restatement (Second) of Torts § 433B(2) ("Where the tortious conduct of two or more actors has combined to bring about harm ..., and one ... actor seeks to limit his liability on the ground that the harm is capable of being apportioned among them, the burden of proof as to the apportionment is upon ... such actor." *Id.*).

29. The parties presented diametrically opposed medical testimony as to the cause of Appellees' shortness of breath. Appellees' experts testified that the shortness of breath resulted from asbestosis while Owens Corning's experts testified that Appellants did not suffer from asbestosis and that the symptoms stemmed solely from their obesity and smoking habits.

30. Restatement (Second) of Torts § 433A ("'(1) Damages for harm are to be apportioned among two or more causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm. (2) Damages for any other harm cannot be apportioned among two or more causes." *Id.*); *Id.* comment (a) ("The rules stated apply also where one of the causes in question is the conduct of the plaintiff himself, ...." *Id.*); *Id.* comment (i) ("Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable or practical division.... By far the greater number of personal injuries, and of harms to tangible property, are thus normally single and indivisible. Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." *Id.*); UNIFORM COMPARATIVE FAULT ACT, *supra* note 10 at § 4, comment ("If the defendants cause separate harms or if the harm is found to be divisible on a reasonable basis, however, the liability may become several for a particular harm[] ..." *Id.*); Restatement (Second) of Torts § 881 ("If two or more persons, acting independently, tortiously cause distinct harms or a single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused." *Id.*); Restatement (Second) of Torts § 875 ("Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm." *Id.*); *Id.* comment b ("This Section should be read together with § 433A, where the distinction is made between harm that is single and indivisible and hence is not apportioned among the various causes that contribute to it, and harms that are distinct or that afford a

apportionment of damages in this case between the separate causes would have constituted little more than improper jury speculation or conjecture.[31]

reasonable basis for division, in which case the apportionment of damages may be made. This Section is concerned only with harm that is not divisible. If the tortious conduct of two or more persons has contributed to the harm in such a manner that each is a legal cause of it, the liability is not apportioned and each is liable for the entire harm." *Id.*); *Martin v. Owens–Corning Fiberglas Corp., supra* note 28 at 948 (The plaintiff sought damages for his asbestosis and presented evidence that his disability was due to both his asbestosis and his emphysema, caused by his long-term smoking. The defendant, however, presented expert testimony that the plaintiff's disability was solely the result of emphysema caused by the plaintiff's cigarette smoking. The jury was instructed to reduce the total amount of the plaintiff's damages "by the percentage that you find is due to cigarette smoking." *Id.* After noting the conflicting testimony of plaintiff's experts, who testified that asbestos exposure and cigarette smoking were both significant causes of plaintiff's disability, and of defendant's expert, who testified that asbestosis played no role in plaintiff's disability, the court, in reversing the apportionment by the jury, stated, "any apportionment by the jury in this case was a result of speculation and conjecture and hence, improper." *Id.* at 950.); *Kalland v. North American Van Lines,* 716 F.2d 570 (9th Cir.1983) ("When it is practically impossible to decide which tortfeasors caused the determinate injuries, an injury must be treated as indivisible even if we know that different tortfeasors probably caused different parts of it." *Id.* at 573.); *Ingram v. ACandS, Inc.,* 977 F.2d 1332 (9th Cir.1992) (holding that it was proper to submit the issue of the plaintiff's comparative fault to the jury, where the plaintiff sought damages only for asbestosis since "[t]he damages for Ingram's lung impairment could not be apportioned between his cigarette smoking and his exposure to asbestos." *Id.* at 1342); *Bradford v. Sagraves,* Ky.App., 556 S.W.2d 166 (1977) ("The evidence presented, however, pointed to independent acts of both of the appellants which a jury reasonably could, and in this instance did, believe produced a single injury. The rule is now well settled in this

Because no apportionment between the separate causes of this shortness of breath, i.e., asbestosis exposure and smoking, was possible, the trial court[32] acted within its discretion when it allowed the jury[33] to

state that while several may be guilty of several and distinct negligent acts, yet, if their concurrent effect is to produce an estimable injury, they are all liable therefor.'" *Id.* at 168. (Citation omitted)); *Glomb v. Glomb,* 366 Pa.Super. 206, 530 A.2d 1362 (1987) ("A court can direct the apportionment of liability among distinct causes only when the injured party suffers distinct harms or when the court is able to identify 'a reasonable basis for determining the contribution of each cause to a single harm.'" "The availability of apportionment therefore hinges upon whether the party who seeks it can demonstrate some logical, reasonable or practical basis for assigning discrete portions of the over-all liability to discrete causes." *Id.* at 1365 (citations omitted)).

31. Restatement (Second) of Torts § 433A ("Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." *Id.*); *Martin v. Owens–Corning Fiberglas Corp., supra* note 28 at 948–950.

32. *Martin v. Owens–Corning Fiberglas Corp., supra* note 28 at 949 ("The trial court must determine, as a matter of law, whether the harm is capable of apportionment." *Id.*); Restatement (Second) of Torts § 434 ("(1) It is the function of the court to determine ... (b) whether the harm to the plaintiff is capable of apportionment among two or more causes...." *Id.*).

33. *See Kalland v. North American Van Lines, supra* note 30 at 573:

Where injuries can properly be apportioned to separate causes based on evidence in the record, there is no occasion to invoke the doctrine of comparative negligence; and if injuries cannot be separately apportioned, then the comparative negligence ratio controls, unaltered by some independent

consider Appellees' smoking as comparative fault.

■ To summarize, if distinct causes produce distinct harms, or if distinct causes produce a single harm and the evidence presented at trial provides a reasonable basis for determining the contribution of each cause to the single harm, a trial court should instruct the jury to apportion the damages to the distinct causes without resorting to comparative fault. If, however, as is the case here, the evidence does not permit apportionment of the damage between separate causes, then comparative fault principles apply, and the trial court should instruct the jury to apportion damages according to the proportionate fault of the parties. Accordingly, we hold that the trial judge properly submitted comparative fault instructions and thereby allowed the jury to assign fault to Appellees based upon their smoking histories.[34]

■ We also agree with Owens Corning's contention that the evidence concerning Parrish's failure to wear a safety mask provided by his employer sufficiently warranted the trial court's comparative fault instruction. Undisputed evidence proved that only the inhalation of asbestos fibers can cause asbestosis. Thus, simple logic permits the inference that Parrish's failure to utilize the safety mask and prevent further inhalation of asbestos fibers may have contributed to his asbestosis. While Parrish's testimony offered several reasons for his failure or refusal to wear a safety mask, the trial court appropriately allowed the jury to evaluate this testimony when determining the reasonableness of Parrish's failure or refusal to wear the safety mask.

## IV. APPORTIONMENT OF FAULT TO LOUISVILLE WATER COMPANY

■ Owens Corning asserts that, based on the evidence, the jury's apportionment of ten (10%) per cent of the fault for Parrish's damages to LWC was proper pursuant to the Comparative Fault Statute. Parrish responds that, since LWC never became a party to Parrish's lawsuit, the trial court improperly allowed the jury to apportion fault to LWC. We disagree with Parrish's position.

Kentucky's Comparative Fault Statute expressly provides for apportionment against a person settling with a claimant:

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. *However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the*

---

assessment of degree of causation. The whole point of comparative negligence is that the relation between injury and cause cannot be accurately determined, and an allocation based on the degree of negligence of each party becomes the measure of liability.

*Id.*

**34.** We realize the jury instructions limited damages solely to Appellees' asbestosis and, theoretically, resulted in damages being apportioned by the jury solely to that cause. If true, to allow the jury to also apportion fault to Appellees would allow a double reduction in Appellees' damages, *i.e.,* (1) the limitation of Appellees' damages solely to those caused by their asbestosis and (2) the 50% assigned to each of them as their part of the total fault. However, based on the evidence, it is not reasonable to believe that the jury did so. Certainly, the evidence did not support such an apportionment. Regardless, this issue is not before the Court.

*obligation, determined in accordance with the provisions of this section.*[35]

KRS 411.182 does not require as a prerequisite for apportionment that the settling person be joined as a party to the action. In fact, it implies that the settling person will not be named a party to the action.[36]

Parrish relies primarily on *Dix & Associates Pipeline Contractors, Inc. v. Key*[37] as support for his argument against apportionment as to his nonparty employer. Parrish directs this Court to the following language of the opinion:

> In Kentucky, when an injured employee proceeds for workers' compensation against his employer and separately, in a tort action, against a negligent third party, *if the employer is made a third-party defendant in the tort action,* the jury should be instructed to determine the total damage sustained by the employee and to apportion liability between the employer and the third party according to the respective fault of each.
>
> When a claim by an injured employee against a negligent third party *in which the employer has been designated a third-party defendant* is settled without trial and apportionment of liability, either the injured employee or the employer shall be entitled to litigate the issue of apportionment of liability in order to ascertain the extent of the employer's right to recoup compensation payments.[38]

We first note that the first paragraph of Parrish's quotation is incomplete and that Parrish does not indicate that he omitted any language. We believe the full context of the quotation is necessary to comprehend *Dix & Associates* and the language emphasized by Parrish. The complete first paragraph of the portion quoted by Parrish reads as follows:

> In Kentucky, when an injured employee proceeds for workers' compensation against his employer and separately, in a tort action, against a negligent third party, if the employer is made a third-party defendant in the tort action, the jury should be instructed to determine the total damage sustained by the employee and to apportion liability between the employer and the third party according to the respective fault of each. The judgment against the negligent third party should be for only that percentage of the total damage which has been apportioned to him, and he will not have any claim for contribution against the employer. *The employer shall then be entitled to recoup from the proceeds of the worker's settlement or judgment a percentage of the amount paid or payable as compensation benefits equal to the percentage of fault apportioned to the negligent third party.*[39]

In *Dix & Associates,* therefore, the employer was a party—a third-party defendant—who sought, by virtue of its counterclaim, "to recoup from the proceeds of the worker's settlement or judgment a percentage of the amount paid or payable as compensation benefits." Here, LWC, Parrish's employer, is not a party and, accordingly, recoupment of benefits paid

---

**35.** KRS 411.182 (our emphasis).

**36.** *Id.* ("'(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and *persons who have been released under subsection (4) of this section*[]....'" *Id.* (emphasis added)).

**37.** Ky. 799 S.W.2d 24 (1990).

**38.** *Id.* at 30–31 (Parrish's emphasis).

**39.** *Id.* at 30–31 (our emphasis).

by LWC was never a possibility in this action. Accordingly, the language quoted from *Dix & Associates* is not determinative of the issue now before the Court.

In fact, we believe *Dix & Associates* supports Owens Corning's position. In *Dix & Associates*, we quoted with approval the holding in *Floyd v. Carlisle Const. Co., Inc.*[40] that apportionment to a settling nonparty was proper, "A tortfeasor who is not actually a defendant is construed to be one for purposes of apportionment if he has settled the claim against him...."[41] We then held that Dix & Associates, the plaintiff's employer, by providing workers compensation coverage, occupied the same position as a settling tortfeasor:

> In this case, what otherwise would have been tort liability of Dix & Associates to the injured worker has been extinguished by reason of the workers compensation coverage. *As a practical matter, workers compensation coverage constitutes a settlement between the employee and the employer whereby the employee settles his tort claim for the amount he will receive as compensation.*

*For all practical purposes, in this case. Dix & Associates occupies the position of a tort-feasor which has settled the tort claim against it.*[42]

 Thus, if supported by the evidence, proper instructions may allow the jury to apportion fault against a settling nonparty,[43] and a settlement, between an employer and employee, of a claim under the Workers' Compensation Act constitutes a settlement under KRS 411.182(4). We therefore hold that the trial court appropriately submitted a comparative fault instruction as to LWC.

For the reasons outlined above, we reverse the decision of the Court of Appeals and reinstate the judgments of the Jefferson Circuit Court.

COOPER, GRAVES, JOHNSTONE and KELLER, JJ., concur.

LAMBERT, C.J., concurs in part and dissents in part by separate opinion in which STUMBO and WINTERSHEIMER, JJ., join.

---

**40.** *Supra* note 5. In *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990), we voiced our continued approval of *Floyd v. Carlisle Const. Co., Inc.*, and after setting forth the recently enacted legislation codifying the principles of comparative fault, now KRS 411.182, we stated:

> The law has now developed to the point that in tort actions involving the fault of more than one party, including third-party defendants and persons who have settled the claim against them, an apportionment instruction, if requested, must be given whereby the jury will determine the amount of the plaintiff's damage and the degree of fault to be allocated to each claimant, defendant, third-party defendant, and person who has been released from liability.

*Id.* at 820.

**41.** *Dix & Associates Pipeline Contractors, Inc. v. Key, supra* note 38 at 28, quoting from *Floyd v. Carlisle Const. Co., Inc., supra* note 5 at 432.

**42.** *Id.* at 29 (our emphasis). *See also Ingersoll–Rand Co. v. Rice*, Ky.App., 775 S.W.2d 924 (1988) (recognizing that an agreement to operate under the Workers Compensation Act was an agreement within the meaning of section (4) of the Comparative Fault Statute, "We also note that KRS 411.182(4) covers the workers' compensation situation; thus, an agreement to operate under the act is a "similar agreement" within the statute." *Id.* at 930); *Griffin Industries, Inc. v. Jones*, Ky., 975 S.W.2d 100 (1998) (approving apportionment of fault to the plaintiff's employer, who was not joined as a party, but rather, had intervened for the purpose of recovering Worker's Compensation benefits it had paid, stating, "The trial judge did not err when he allowed evidence of the negligence of Jones employer to be introduced in the apportionment instructions." *Id.* at 103).

**43.** *Floyd v. Carlisle Construction Company, supra* note 5.

LAMBERT, Chief Justice, concurring in part and dissenting in part.

I concur with the majority opinion except as to Part IV relating to apportionment of fault to Louisville Water Company.

The Court of Appeals properly stated the facts and applied the law as follows:

LWC [Louisville Water Company] was not ever named a party to the action herein, but prior to trial, Parrish settled a workers' compensation claim with LWC based on the resultant disability from the asbestos exposure. First, as this was a product's liability action, we see no justification for apportioning fault to LWC since it had nothing to do with the "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." *See* KRS 411.300(1). Nor was the employee a wholesaler, distributor or retailer. *See* KRS 411.340.

The view expressed above is consistent with the view I expressed in *Griffin Industries, Inc. v. Jones.*[1] There, as here, this Court's majority allowed apportionment of liability against a Workers' Compensation carrier. My view is that apportionment is improper because the injured employee has no right to recover against the employer because of the exclusive remedy provision of the Workers' Compensation Act.

STUMBO and WINTERSHEIMER, JJ., join this opinion.

---

1. Ky., 975 S.W.2d 100 (1998) (Lambert, J., concurring in part and dissenting in part).